UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FRANCISCO YATES, | : | Case No. 3:10-cv-438 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| ALLSTATE INSURANCE COMPANY, | : | |
| Defendant. | : | |

**DECISION AND ENTRY DENYING DEFENDANT ALLSTATE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT (DOC. 42)**

This civil case is before the Court on the Motion for Summary Judgment filed by Defendant Allstate Insurance Company ("Allstate"). (Doc. 42). Plaintiff Francisco Yates ("Plaintiff") filed a Response in Opposition to Allstate's Motion. (Doc. 50). Allstate filed a Reply Memorandum in Support of its Motion. (Doc. 52). Allstate's Motion is now ripe for decision.

**I. STATEMENT OF FACTS**[1]

On May 6, 2009, Plaintiff filed a lawsuit in the Montgomery County Court of Common Pleas against both Allstate and Sean Ryon (hereinafter referred to as the "underlying case"). (Doc. 18-1). In the underlying case, Plaintiff asserted claims against Allstate for breach of contract and uninsured/underinsured motorist coverage stemming from an October 27, 2007 motor vehicle accident involving the Plaintiff and Sean Ryon. (*Id.*) Plaintiff also alleged claims of negligence against Sean Ryon. (*Id.*)

---

[1] This statement of facts, in large part, incorporates the Proposed Undisputed Facts presented by Allstate. (Doc. 47).

Plaintiff eventually dismissed his claims against Allstate in the underlying case pursuant to Ohio Civil Rule 41(A), without prejudice. (Doc. 18-2). Allstate, however, remained in the case by way of its cross-claim against Sean Ryon. (*Id*.) Eventually, Plaintiff reached a settlement agreement with Sean Ryon and signed an "Affidavit and Release" relative to the settlement. As a result, the parties dismissed the underlying case. (Doc. 18-3).

Plaintiff filed this case against Allstate on October 25, 2010, originally asserting breach of contract and bad faith against Allstate. (*Id*.) Allstate then removed the case to federal court. (Doc. 1). Following removal, the Court granted Plaintiff leave to file an Amended Complaint. (Doc. 19). Plaintiff's Amended Complaint asserts claims of bad faith against Allstate but omits breach of contract claims. (*Id*.) Allstate now moves for summary judgment pursuant to Fed. R. Civ. P. 56. (Doc. 42).

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986).

"Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citing Fed. R. Civ. P. 56(e)(2)).

### III. ANALYSIS

#### A. <u>Effect of Settlement on Coverage</u>

Allstate argues that "[t]here is no coverage under the policy of insurance" because Plaintiff settled his claims against Sean Ryon, the alleged tortfeasor in the underlying case. In support of this argument, Allstate cites two cases: *Snider v. Nationwide Assurance Co.*, 07 BE 35, 2009 WL 582573 (Ohio App. Mar. 6, 2009); and *Jayne v. Wayne Mut. Ins. Co.*, 04CA9, 2004 WL 2940894 (Ohio App. Dec. 10, 2004).

Contrary to Allstate's contention, neither case stands for the proposition that Plaintiff's settlement with a purported tortfeasor results in the lack of *coverage* under the insurance policy. Instead, the courts in *Snider* and *Jayne* simply concluded that, regardless of whether coverage existed, plaintiffs could not prevail on a breach of

judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment - rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Technologies, Inc.*, 375 Fed. Appx. 482, 485 (6th Cir. 2010) (citing Fed. R. Civ. P. 56(e)(2)). Instead, the party opposing summary judgment "must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial." *Id*. (citing Fed. R. Civ. P. 56(e)(2)).

### III. ANALYSIS

#### A. <u>Effect of Settlement on Coverage</u>

Allstate argues that "[t]here is no coverage under the policy of insurance" because Plaintiff settled his claims against Sean Ryon, the alleged tortfeasor in the underlying case. In support of this argument, Allstate cites two cases: *Snider v. Nationwide Assurance Co.*, 07 BE 35, 2009 WL 582573 (Ohio App. Mar. 6, 2009); and *Jayne v. Wayne Mut. Ins. Co.*, 04CA9, 2004 WL 2940894 (Ohio App. Dec. 10, 2004).

Contrary to Allstate's contention, neither case stands for the proposition that Plaintiff's settlement with a purported tortfeasor results in the lack of *coverage* under the insurance policy. Instead, the courts in *Snider* and *Jayne* simply concluded that, regardless of whether coverage existed, plaintiffs could not prevail on a breach of

contract claim seeking medical payments coverage where plaintiffs already "received full compensation from the tortfeasor for their injuries." *Jayne*, 2004 WL 2940894 at *5; *see also Snider*, 2009 WL 582573 at *4. Accordingly, Allstate's contention in this regard is without merit and is overruled.

Insofar as Allstate asserts that settlement with the Sean Ryon in the underlying case extinguishes any breach of contract claim against Allstate, such argument is moot because Plaintiff does not assert a claim for breach of contract in this case. Based on the foregoing, the Court finds no merit to Allstate's first argument.

### B. Bad Faith in the Absence of a Breach of Contract Claim

Next, Allstate contends that Plaintiff's bad faith claim cannot survive in the absence of a breach of contract claim. Allstate contends that Plaintiff's bad faith claim is barred as a matter of law because he "voluntarily dismissed the breach of contract claim and is only pursuing a claim of bad faith." (Doc. 42, PAGEID 331).

Even assuming Plaintiff must successfully show that the disputed treatment was covered under the policy in order to prevail on his bad faith claim, Plaintiff does not necessarily have to prevail on a breach of contract claim to establish coverage.[2] *See*

---

[2] "Some Ohio courts have held that an insured might be able to prove the second type of bad faith claim-based on failure to determine whether there was a lawful basis to deny coverage - even if he fails to establish the underlying coverage claim." *Poneris v. Pennsylvania Life Ins. Co.*, No. 1:06-cv-254, 2007 WL 3047232, at *2 (S.D. Ohio Oct. 18, 2007) (citing *Mid-American Fire & Cas. Co. v. Broughton*, 154 Ohio App.3d 728, 798 N.E.2d 1109 (Ohio App. 2003); *Essad v. Cincinnati Cas. Co.*, No. 00 CA 199, 2002 WL 924439 (Ohio App. Apr. 16, 2002); *Bullet Trucking, Inc. v. Glen Falls Ins. Co.*, 84 Ohio App.3d 327, 333, 616 N.E.2d 1123 (Ohio App. 1992); *but see Hahn's Elec. Co. v. Cochran*, No. 01AP-1391, 01AP-1394, 2002 WL 31111850 (Ohio App. Sept. 24, 2002)); *see also* Duncan, Ed E., *Bad Faith Absent Coverage*, Oh. Ins. Coverage § 12:9 (2011).

*Toledo-Lucas Cnty. Port Auth. v. AXA Marine & Aviation Ins. (UK) Ltd.*, 220 F.Supp.2d 868, 873 (N.D. Ohio Sept. 4, 2002) (analyzing *Bullet Trucking*, 84 Ohio App.3d 327, and finding that "the issue of whether an insured must succeed on its breach of contract claim in order to maintain a bad faith claim . . . is separate and distinct [from] . . . whether coverage must exist in the first instance"). It is the "insurer's breach of the duty [of good faith that] gives rise to a cause of action in tort, irrespective of any liability that might arise from a breach of the underlying insurance contract." *Buckeye Union Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, Nos. C-960282, A-9100556, 1997 WL 180278 (Ohio App. Apr. 16, 1997) (citing *Staff Builders, Inc. v. Armstrong*, 37 Ohio St.3d 298, 525 N.E.2d 783 (Ohio 1988)).

Courts in this district have recognized the same, noting that "the Sixth Circuit has not specifically foreclosed recovery on a bad faith tort claim in circumstances where the underlying breach of contract claim failed." *Poneris*, 2007 WL 3047232, at *2 (referencing *Klein v. State Farm Fire & Cas.*, 250 Fed.Appx. 150 (6th Cir. 2007)). For instance, in *Klein*, the Sixth Circuit considered the merits of plaintiff's bad faith claim despite the fact that plaintiff's breach of contract claim was precluded by a one-year limitation provision in the insurance policy. *Klein*, 250 Fed.Appx at 156-157.[3]

While not offering any specific argument in this regard, Allstate apparently assumes that, because Plaintiff dismissed his claim for breach of contract, Plaintiff is

---

[3] The Sixth Circuit noted that the bad faith claim was "independent of the contract of insurance" and, thus, not subject to the contractual limitations period that barred plaintiff's breach of contract claim. The Sixth Circuit, nevertheless, affirmed the grant of summary judgment in favor of the insurer because plaintiff failed to prove that the insurer's actions amounted to more than mere bad judgment. *Id*. at 157.

precluded from proving that such treatment is covered under the policy.[4] Allstate cites no authority to support such a proposition. Simply because Plaintiff cannot prevail and recover damages on a breach of contract claim in this case (because he essentially dismissed such a claim voluntarily) does not preclude Plaintiff from proving that the treatment at issue was covered by the Allstate insurance policy. Accordingly, Allstate's contention in this regard is without merit and is overruled.

C.     **Bad Faith**

Finally, Allstate contends that Plaintiff has failed to demonstrate that it acted unreasonably in investigating and denying Plaintiff's medical payments claim.

"[A] cause of action arises for the tort of bad faith when an insurer breaches its duty of good faith by intentionally refusing to satisfy an insured's claim where there is either (1) no lawful basis for the refusal coupled with actual knowledge of that fact or (2) an intentional failure to determine whether there was any lawful basis for such refusal." *Motorists Mut. Ins. Co. v. Said*, 63 Ohio St.3d 690, 699-700, 590 N.E.2d 1228 (Ohio 1992). The Ohio Supreme Court later overruled *Said* to the extent that it held that intent was an element of a bad faith tort and clarified that the standard for determining bad faith is simply "reasonable justification[.]" *Zoppo v. Homestead Ins. Co.*, 71 Ohio St.3d 552,

---

[4] Clearly Plaintiff intends to demonstrate that the disputed treatment was covered under the Allstate policy. Plaintiff specifically argues that "there is absolutely no question that there was insurance coverage in the first instance." (Doc. 50, PAGEID 383). Allstate's Motion does not argue a lack of genuine issues of material fact concerning coverage, and, therefore, the existence of coverage is not before the Court at this time. Certainly Plaintiff's disclosed expert, Dr. Brian Briggs, in his report filed in this case, offers the opinion that the treatment for which Allstate denied coverage was caused by the October 27, 2007 automobile accident. (Doc. 49-1, PAGEID 366).

644 N.E.2d 397 (Ohio 1994); *see also Poneris*, 2007 WL 3047232 at *2. "*Zoppo* did not overturn the *Said* principle that two types of bad faith claims exist under Ohio law." *Poneris*, 2007 WL 3047232 at *2 (citing *Essad*, 2002 WL 924439).

Here, although Plaintiff appears to assert both types of bad faith claims,[5] Allstate's argument addresses only the merits of a claim asserted under the first prong of *Said*. Specifically, Allstate argues that Allstate was reasonably justified in denying Plaintiff's medical payments claim because: (1) "immediately following the accident, Plaintiff reported no injury[;]" (2) "Plaintiff did not have any pain or injury for two days after the accident, and it was only after he stood up from picking up his groceries that he incurred an injury[;]" and (3) "Steven Wunder, M.D. and Kenneth Jenkins, D.C. . . . provided reports suggesting Plaintiff suffered no injury in the October 27, 2007 motor vehicle accident." (Doc. 42, PAGEID 332-333).

The Court first notes that Allstate points to absolutely no specific evidence in the record demonstrating that any of the foregoing reasons were reasons Allstate actually relied upon in declining to pay for certain chiropractic treatment. *See Great West Cas. Co. v. Flandrich*, 605 F.Supp.2d 955, 979 n.7 (S.D. Ohio 2009) (concluding that the insurer could not rely on information that did not actually impact its coverage decision). The deposition of Carla Cornecelli, the Allstate claims adjuster who made the decision not to pay portions of Plaintiff's medical payments claim, is, however, part of the record.

---

[5] At the least, Plaintiff's Amended Complaint asserts a claim of bad faith under the second prong of *Said*, alleging that Allstate "failed to fully and fairly investigate and evaluate the Plaintiff's medical claims[.]" (Doc. 19, PAGEID 109).

In her deposition, Ms. Cornecelli testified that she decided not to allow bills from Northside Chiropractic after November 8, 2007 because there was a gap in treatment between November 8, 2007 and November 26, 2007. (Doc. 51-1, PAGEID 506-507). Ms. Cornecelli admitted, however, that she did not really "know if there was a gap in treatment . . . because . . . [she] didn't really look at the other bills[,]" despite "know[ing] he was treating with other people at the same time." (Doc. 51-1, PAGEID 517). She also decided not to pay for certain x-rays because "there was no corresponding chart notes to support them." (Doc. 51-1, PAGEID 449, 508).

Concerning the purported justifications set forth by Allstate in its Motion, the Court notes that Ms. Cornecelli did not find Plaintiff's lack of immediate injury "overly" significant because, as Ms. Cornecelli testified, a lot of people do not notice injury from an accident for "a day or two" after an accident. (Doc. 51-1, PAGEID 514-515). Concerning Plaintiff injuring his back picking up groceries, Ms. Cornecelli only testified that she somewhat recalled Plaintiff's testimony to that extent and, while such testimony "raised [her] eyebrows[,]" (Doc. 51-1, PAGEID 513), Allstate points to no evidence that it was an actual basis for denying coverage. (Doc. 51-1, PAGEID 513).[6]

---

[6] Further, Plaintiff's actual testimony may not necessarily support the characterization that Plaintiff "incurred an injury" picking up groceries. Instead, it is arguable that Plaintiff testified only that he *noticed* the alleged pain in his back at that time. (Doc. 38, PAGEID 296). During the examination under oath, Plaintiff was asked "[w]hen did you first start complaining of the pain and problems you've told me about?" (*Id.*) Plaintiff responded, "[a]bout two days after the accident." (*Id.*) Plaintiff was then asked to tell "what happened two days after the accident." (*Id.*) Plaintiff responded, "I was coming home from the grocery store and the bottom of my bag had fell out and I was stooping right there in front of the door picking up groceries. And as I was coming up I just felt all this like burning and pain in my back." (*Id.*)

Finally, with regard to the alleged reports by Dr. Wunder and Dr. Jenkins "suggesting Plaintiff suffered no injury in the . . . accident[,]" not only does Allstate fail to reveal the actual contents of those reports, or evidence any actual reliance by Allstate on those reports, Ms. Cornecelli testified that, to her knowledge, she never consulted with an independent examining doctor or a peer review doctor in making her determination. (Doc. 51-1, PAGEID 488, 494). In fact, it was revealed at Ms. Cornecelli's deposition that Plaintiff did not undergo an independent medical examination with Dr. Wunder until months after Ms. Cornecelli decided not to pay for the x-ray or any treatment with Northside Chiropractic post-November 8, 2007. (Doc. 51-1, PAGEID 494).

Thus, because Allstate fails to evidence that its reasons for denying Plaintiff's claim were reasonable as a matter of law, Allstate's Motion is denied.

## IV. CONCLUSION

For the all of the forgoing reasons, Allstate's Motion for Summary Judgment (Doc. 42) is **DENIED** in its entirety.

**IT IS SO ORDERED.**

Date:  5/25/12                                                            *s/ Timothy S. Black*
                                                                          Timothy S. Black
                                                                          United States District Judge